The first case this afternoon is case number 417-0031, Galardy v. Stennett. For the appellant we have Shayla Louise and for appellate Richard Chapin. Please proceed. Please support counsel. We're here today on behalf of the plaintiff appellant Michael Galardy. And Mr. Galardy's case, the court erred in his case in granting summary judgment. For several reasons. First, the court used the wrong standard of review. In their order, the court stated the wrong standard of review and then went on to analyze the facts and the law in the case from the eyes of the most favorable to the moving party and not the non-moving party. As required. The court, the lower court claimed that this was simply a typographical error. But when reviewing his order, it is clear that the court used the wrong standard of review. The second reason why the court, the lower court should be overturned is that there was in fact a defect in the roof. What was the defect? The defect was age. It was deterioration from wear and tear. When the home was inspected a year prior, the home inspector stated that the roof was so bad that he couldn't even get to other parts of the roof that he didn't He was talking about a more specific area, this awning as it was described. And as I recall, the inspector did not inspect that portion. He did not mention the awning specifically in his report. And he indicated that if there were problems with that portion, that he would have noted that, correct? Actually, what he said in his report and on deposition was that the roof was so bad that he couldn't, he wouldn't walk any further. And he was afraid to walk any further to examine that portion. I thought there were some issues about the awning and he was asked about it and maybe it was when they were trying to determine whether or not the damage resulted from your client standing on it and it falling or was it already like that? And I thought that the inspector indicated that if he had seen that, he would have noted it. Right. He did state that, but he also stated in his report that he didn't examine the entire roof because the roof was so bad overall. And of course, the homeowner was aware of the condition of the roof. The homeowner also knew that they only replaced a small section of the roof. So they didn't replace, tear off the entire roof. They didn't touch this awning. They didn't touch several other portions of the roof. They only repaired one issue where there was puzzling on the roof. Going back to what was the defect, can you specify the defect here? What was it that was defective about this roof that led to your client's injury? So the roof had deterioration. It was old and at the end of its useful life, but it also... Let's work backwards. Sure. What was the mechanism of the failure? So as soon as the plaintiff stepped onto the roof, the roof gave way and collapsed. It gave way. So something failed, is that right? Correct. What failed? There were nails and screws holding the awning into the house, connected to the house. There was also cables. Both the cables and the nails and or screws all failed. And the roof fell down and eventually landed on top of the plaintiff. So is it the inadequacy of the nails and screws and cables that were alleged to be the defect here? Well, the roof didn't meet load-bearing requirements. Now, you've got to be specific. You know, when you're looking to charge a homeowner with liability for an injury that occurred, the homeowner has to be either aware of the defect or have constructive knowledge of the defect. He knew or should have known of the defective condition. And you've got to hone in here. We have to hone in on what is it that's alleged to have been defective. And I have to say, reading through the record in this case, I can't identify where it is alleged there was a specific defect. And can you point me in that direction? This is the first time I've heard that maybe the defective condition related to the fasteners, screws, nails. But is that in the record? Is that something that an expert looked at this and said there was some defect in the manner in which the fasteners were applied or in the nature of the fasteners themselves? Well, our expert did not pinpoint the exact screw or cable that failed. He just said that this roof was supposed to hold, you know, 250 pounds. You know, it had roofing material on it. This plaintiff should have been able to stand on it and work on it. And, you know, because it failed as soon as he stepped on it, there was a defect in the roof. But that's Ray Sipsa's look with it. That's not what is alleged here. You have an alleged Ray Sipsa here, right? That's correct. So you have evidence that an injury occurred. You have backing up evidence that the injury occurred due to a condition of the property. But what it appears you don't have is an allegation of a specific defect or evidence of a specific defect. So can you hone in on that? Is there evidence of a specific defect? The defect is age. The defect was deterioration. The defect was it didn't meet the low bearing requirement. Those are the defects that were identified by the home inspector and the expert. And that's all we have. I mean, they didn't go, I mean, the home inspector did talk about the age. He did talk about just the deterioration in the roof as a whole. But again, not pointing to this particular portion of the roof, but he did state that, you know, the roof is bad. He also stated in his deposition that, you know, the entire roof appeared to be the same age. So there wasn't one section of the roof that looked newer than the other. I mean, the entire roof appeared to be the same age and had the, you know, from what he saw, the same amount of damage on it. And, you know, and the homeowner was aware of the condition of the roof and he did fix a portion of the roof. I think it's more important that he didn't fix this portion of the roof. Well, let me ask you this. So as you indicated, there were some portions fixed and that kind of brings me to the issue of did the homeowner know or, you know, have reason to know if the portions of the roof that needed fixing were fixed, how is he on notice that there still remains a problem with the roof? They only fixed the portion of the roof where there was pooling water. So the home inspector said, you know, the entire roof is at or near its useful life. But this area right here has pooling water. And they had just that area of the roof repaired. The rest of it, there have been no other repairs done. Moving on, the evidence shows that the defect was not open and obvious. And the reason I rely on that is because when the plaintiff arrived at the property, there were two other workers already standing on this section of the roof, this awning. And two men were working on it. They finished their work. They left. The plaintiff came back. And then as soon as he stepped onto the roof, it failed. However, if the court believes it was open and obvious, then I believe the distraction exception does apply here. As Mr. Ghilardi was climbing onto the roof, the defendant engaged him in conversation about the repairs that he had just had to spend over $1,000 on. And he blamed the power company. And he was trying to get the plaintiff to go along with his theory about why it was the power company's fault that he was having any electrical issues at all. And Mr. Ghilardi explained to him, well, that's not really how it works. And we're not responsible for the arc. And he's going back and forth as the defendant gets more and more agitated. And then he steps onto the roof and the roof collapses. So because the defendant was instrumental in creating the distraction, the cases cited by the defense in this matter just simply don't apply. You know, the defendant in this case caused the distraction. And therefore, the distraction exception should apply. The biggest reason why we believe this court should overturn the lower court's decision, however, is because there's simply too many factual material facts that are in dispute in this matter. Whether or not there was a defect is a factual issue that the jury should decide. Whether or not the distraction exception applies is a factual issue that the jury should decide. And all the facts in this case should be decided by the jury and not the court. And for all of those reasons, we believe this case should go back down to the lower court so that the jury can decide these factual issues. Thank you. Thank you. You'll have rebuttal. Mr. Chapin? First of all, to address very quickly whether or not Judge Ford applied the wrong standard in deciding the motion. I think that this was a typo. That's what he called it. He clearly is an experienced and competent judge who has considered summary judgment on many occasions. I think it was a typo. He corrected that error. But in any event, the appellate court considers this as a de novo review, so I'm sure that the court will apply the proper standard here. And that's really not an issue that needs to be decided. I think the court's made it clear what the issue is here is whether or not there is evidence that this awning had a defect. And that's important because, as the court has stated, the homeowner is responsible for taking care of a defect of which they have actual knowledge or of which they have constructive knowledge. Now, without knowing what the defect even is, it's hard to assess how the defendant could have had actual knowledge or what clues there might have been that would have given him constructive knowledge. One way you establish constructive knowledge is you say the condition has existed so long that they know or should know of it. But we don't know what the defect was, so we don't know how long it existed. Without knowing if it was the court or the counsel seems to concede that this was a latent defect, in which case I'm puzzled just as to how my client should have known of something that can't be identified. As I kept saying in my brief, it's an unspecified latent defect that they claim. The plaintiff filed a verified complaint. This is not just an unverified complaint, but a verified complaint saying that I know these facts to be true. And when I asked him in his deposition what was the defect, he said, I don't know. And I went without any suggestion of what a defect was until after the motion for summary judgment was filed and an expert's report was produced. And his report seems to be the mere fact that there was a failure of the awning is proof that there was a defect. But he doesn't identify what that defect was. So again, we miss that. I noticed in count three of the amended complaint, the allegation is made that there was a condition on the roof. I'm just reading from paragraph 29. There was a condition on the roof and the roof was improperly supported with steel ties as opposed to steel ties in conjunction with wooden beams for additional support, which presented an unreasonable risk of harm to the plaintiff. Was there evidence supporting that allegation that that was a condition and further evidence that it was a defect that approximately resulted in plaintiff's injuries? Well, I think there's no question but that there were not beams extending downward or to the ground or upward from the ground to support the remote corners, the corners away from the house. There were no beams there. And that, of course, is a condition that would have been open and obvious to the plaintiff. Well, a beam is a horizontal member, right, opposed to a vertical member? Well, in that case, I don't know what they're talking about, a beam, unless they're talking about there were not beams going into the interior of the house. And I asked the plaintiff about that. I said, is that what you're trying to say? And he suggested that maybe that was it, the beams. And I says, could you tell that there were or were not? And he says, no, I couldn't tell. And so that puts us back in the same spot as my homeowner. How would he know whether or not there were beams going into the house, whether it would be hidden? There's no evidence that he did know or had reason to inspect for that. And it had never been raised by the expert or anyone else that that should have been the manner in which it was supported. The fact is that it was clear that this was supported by a two-by-four or some sort of a board up against the side of the house into which it was nailed, combined with the cables that were going from the front corners up to the house. And those were, that means or mechanism of attachment was obvious to the plaintiff as much as it was to the defendant. And of course the plaintiff is trained to assess a condition before he assumes it as a working platform or as a condition of his employment. He had a duty to assess the safety of his work environment. He says that he did do that and nonetheless the accident occurred. But none of this is evidence that my client, just a homeowner of less than a year, a homeowner who did not create this awning, a homeowner who had no reason to believe it was defective because for him it's not leaking, the light works, it provides the kind of protection that he expects it to provide, which is minimum protection from the elements and a little bit of illumination when he's trying to get in and out of that door. So it's not like it's one cable is broken and this thing is hanging a kilter at one side that would put people on notice. But even if it were the situation, if that was the situation, then that would have been open and obvious to the defendant, I mean to the plaintiff as much as to the defendant. And I don't think, this is really not an open and obvious case, but the distraction exception would certainly not apply because the distraction exception says that the owner of the premises is aware of the dangerous condition but has reason to believe that people on his property will be distracted and forget about the condition and fail to protect themselves. Now here, not knowing what the defect is, if it's open and obvious to one who is standing on top of or getting ready to step onto the ladder, and that's where the distraction occurs, according to counsel, is as he's up on this ladder looking onto it, getting ready to step onto it, then that's a perspective that there's no evidence that the defendant ever had. And so the defendant, as the owner, has no reason to believe people will not recognize or will forget about a condition that he doesn't know exists. So the distraction exception fails because there's an essential element of that exception that is not applicable in this case. Unlike Ward v. Kmart, the store knew that post was out there, knew that people would be carrying large boxes and might forget about it. Here we have a condition that the defendant is ignorant of if we accept that there was an open and obvious condition apparent to one standing on top. And I think you asked the question, Your Honor, about the condition of that awning and whether or not the inspector said he would have noted it. I think that was in reference to photographs of the awning after the accident, which showed around the rim, it showed places where it was depressed and we don't know if that occurred in the accident or if it was present before the accident. The inspector was saying, if I saw that kind of condition, then I would have noted that. And of course, my point in that questioning is that if the train electrician is going up on the ladder and looks over and he sees the state of disrepair and decay, then that puts him on notice that I shouldn't perhaps be standing on this, this is in a state of disrepair. But we have no evidence that my client ever knew if that condition existed prior to the accident. We have no evidence that my client knew it existed. So again, what was the defect and if there was one, what's the evidence my client had any knowledge? I think it fails on both of those counts. There's no actual knowledge, no constructive knowledge of a defect that's unspecified. Thank you. Okay. Thank you, Counsel. Is there any rebuttal? Just briefly, Your Honor. Is that right? Yes. Okay. Please accept my apology. My grandma called me Shayla Louise my whole life. Now please proceed to rebuttal. Your Honor, I'd just like again to point out that the defect here was the deterioration, the wear, all of the items that the inspector pointed out in his inspection. The fact that the inspector told the homeowner in a written report that your roof is so bad I can't even visually inspect all of it. You need to have it looked at. The homeowner knows that he only repaired one section of that roof. So he knew that he'd had some issues in the past. He knew that he hadn't repaired all of the issues. He knew he hadn't replaced the entire roof and therefore he had knowledge. He had a duty to warn. He didn't warn the plaintiff and the plaintiff was injured. Thank you. Okay. Thanks to both of you. The case is submitted and the court stands in recess.